QUAN YUEI LEN v. WHITE, Commissioner of Immigration.

(Circuit Court of Appeals, Ninth Circuit. April 21, 1924.)

No. 4110.

1. Aliens ⟲25—Alleged Chinese merchant's interest in business must be substantial and real to warrant admission of son,

Under Act Nov. 3, 1893, § 2, defining "merchant," alleged Chinese merchant's interest in business must be substantial and real, in order to warrant admission of his infant son.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Merchant.]

2. Aliens ⟲32(8)—Finding that father of applicant for admission is not merchant sustained by evidence.

Finding by immigration officers that father of Chinese applicant for admission was not a merchant *held* sustained by evidence.

⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Maurice T. Dooling, Judge.

Petition by Quan Yuei Len for writ of habeas corpus, against Edward White, as Commissioner of Immigration for the Port of San Francisco. The writ was dismissed, and petitioner appeals. Affirmed.

Alfred L. Worley and Louis Goldberg, both of San Francisco, Cal., for appellant.

John T. Williams, U. S. Atty., and Alma M. Myers, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The appellant applied for admission to the United States as the minor son of Quan Sing, alleged to be a domiciled Chinese merchant. The commissioner of immigration, being unable to conclude either that the appellant was the son of Quan Sing or that the latter was a merchant, denied the application. Appeal was taken to the Secretary of Labor, and the decision was affirmed. The appellant filed his petition for a writ of habeas corpus in the court below, alleging that he had been denied a fair hearing, in that it appeared that the sole basis for denying Quan Sing's status as a merchant was that there were too many partners in the firm for the small amount of business transacted by it, and that the commissioner abused the discretion committed to him and excluded the appellant without authority of law. Upon the hearing upon the writ the court below held that the proceedings on the appellant's application for admission were conclusive upon the court, since they were not without support in the testimony. The writ was dismissed and the appellant was remanded.

Quan Sing, the alleged father of the appellant, first came to the United States in 1881. In December, 1902, he returned to China, and he came again to the United States in September, 1904. He testified that he was married in January, 1903, and that the appellant herein was born in January, 1905. There was some discrepancy between his testimony and that of his son, Quan Yuei Quong, who made application to enter at the same time with the appellant. Quan Sing testified that the appellant's maternal grandfather, Jew Jin Haw, was still living, and that his eldest boy so wrote him last year; whereas the appellant and his brother both testified that Jew Jin Haw died in their home village 12 or 13 years ago. There were other minor discrepancies between the testimony of the appellant and that of witnesses called in his behalf.

[1, 2] But, whatever may be said of the evidence of the relationship between the appellant and Quan Sing, we are convinced that we have no ground for holding that there was lack of testimony to sustain the conclusion of the immigration officials that Quan Sing was not shown to be a merchant. Nor do we find that that conclusion is in any way impeached by evidence of prejudice or unfair hearing. Section 2 of the Act of November 3, 1893 (28 Stat. 7), defining the term "merchant," with the construction placed thereon by the Supreme Court in Tom Hong v. United States, 193 U. S. 517, 24 Sup. Ct. 517, 48 L. Ed. 772,

makes it clear that it is the purpose of the law to prevent those who have no real interest as merchants from making fraudulent claims to the benefits of the act, and that in order to be within the purview of the act the alleged merchant's interest in a business must be substantial and real. Said the court:

"The main purpose is to require the person to be a bona fide merchant, having in his own name and right an interest in a real mercantile business."

The record shows that on December 5, 1902, Quan Sing, then a laborer and wishing to depart from this country with the right to return as a laborer, furnished evidence that he was the owner of property of not less than $1,000, testified that he had property in the Quan Tsue Lung Company, a partnership engaged in grocery and general merchandise business in Los Angeles; that he had $500 interest in that firm, which had been so invested for 10 years. His testimony was corroborated by Quan Chow, who was the manager of the firm. When Quan Sing returned from China in 1904 he again testified that he had an interest in the firm of $500, and that his name appeared on the list of partners in the firm; but, when he appeared as a witness for the appellant upon the latter's application for admission to the United States, he testified, when asked upon what ground he had based his right to visit China as a laborer in 1902, that the Quan Yick Laundry owed him money, and the Quan Tsue Lung Company owed him $500, which had been borrowed by Quan Jew, a member of the firm, to buy goods with, and that he was not a member of that company when he went to China, and that he did not become a member until February or March, 1918, when he paid $500 for a share in the firm.

By this testimony Quan Sing was discredited as a witness, and the immigration officials were given sufficient ground to doubt the bona fides of his claim to a mercantile status. There were also marked discrepancies between his testimony and that of the bookkeeper and the manager of the firm, exhibiting a suggestive lack of knowledge on the part of Quan Sing of the nature and conduct of the firm's business. His testimony was inaccurate as to the amount of rent paid for the store, the number of men who slept on the premises, the quantity of rice ordered by the firm, the quantity on hand, the amount of business transacted on the day before the examination, the amount of money due the firm, the quantity of goods bought from a named firm during the prior week, and the moneys intrusted to the firm for safe-keeping. In addition to the foregoing, the evidence was that there were 17 members of the firm, 4 of whom were silent partners, and that the business was capitalized at $9,000, showing, as stated by the chairman of the board of review, that the number of alleged partners was entirely out of proportion to the amount of business transacted.

Nor do we find that the inspector who conducted the hearing at Los Angeles was biased or prejudiced against the Quan Tsue Lung Company, or that bias was reflected in his report. The inspector found that the room occupied by the firm as a store was small; that the only counter in the store was 9 feet long and 2 feet wide; that the stock in the store was meager, as was the amount of the daily business transacted. There was lack of substantial evidence that Quan Sing had ever

performed any active duties in connection with the firm. It is not surprising, and it is not evidence of bias, that in view of all these facts and the situation and arrangement of the rooms it was suspected that among the activities of the firm were gambling and lottery operations. Nor should it condemn the hearing as unfair that the inspector in his report said:

"It seems that some air of mystery has pervaded this place ever since I have been in the city, and while applications of alleged members of the firm have invariably been approved, I am not satisfied that the partnership list is a bona fide one."

And it does not seem to us that the inspector's suspicions as to the character of the firm were groundless, or that the expression of them renders the hearing unfair.

The judgment is affirmed.